————o————

No. 5702.

ROBERT S. ELLIS vs. ILLINOIS CENTRAL R. R. CO.

## Syllabus.

The regulation of traffic by fixing the time and manner in which a railroad company shall carry persons and property, the price to be paid therefor, and the places at which its trains shall stop to receive and discharge the same, is a legislative and not a judicial function.

Appeal from the Civil District Court for the Parish of Orleans, Division "C," No. 80,019. Hon. E. K. Skinner, Judge.

Dart, Kernan & Dart, for plaintiff and appellant.

Gustave Lemle, for defendant and appellee.

Ansley & Ansley, attorneys.

His Honor, JOHN ST. PAUL, rendered the opinion and decree of the Court as follows:

The cause of action on which plaintiff relies is thus succinctly stated in the brief filed in his behalf:

"The plaintiff's complaint is that, having a dairy at Arcola, he had a contract guaranteeing him a fixed

price per gallon for milk delivered in New Orleans, which he shipped on defendant's trains, one of which carried it, in the early morning, and the other, late in the evening; that in August, 1905, the defendant discontinued the evening train, and refused to transport his milk, delivered for shipment, with the freight charges prepaid, and that this condition continued until October of that year. He tried to minimize his loss, but the result was a loss to him of the amount for which he sues. As to his loss, on the general facts alleged and the proof made, there is no dispute."

And the position assumed by defendant is clearly stated in the brief filed in its behalf, as follows:

"We contend that plaintiff has absolutely no cause of action; that there was no statutory duty upon this defendant to maintain that particular train, and that as a railroad corporation, like any other corporation, is primarily formed for the interest of the stockholders, that there is a wide discretion lodged in the board of directors with reference to the management of its affairs so as to realize a profit on the investment of the stockholders. We do not wish to be understood as saying however, that a common carrier owes no duties to the public. It has very definite duties, and the sources of those duties are to be found only in one of two places, or in both. The franchise being a contract between the State and the railroad company, the State therein can impose certain obligations upon the carrier to whom it has given a franchise. The carrier also being a corporation is subject to legislative control. Therefore, in ascertaining whether or not this plaintiff has a cause of action, we are compelled to ask if there is any evidence in this record to show that the duty of maintaining a particular train has been imposed upon this defendant either by its charter, its franchise, or by legislative enactment. We unhesitatingly say there is not a word of evidence showing this obligation to exist in any of these sources of obligation."

We are of opinion that the proposition thus contended for by the defendant is correct.

We think that the regulation of traffic, by fixing the time and manner in which a railroad company shall carry persons and property, the price to be paid therefor, and the places at which its trains shall stop to receive and discharge the same, is a legislative and not a judicial function.

This conclusion is fully sustained by the opinion of the Supreme Court of the United States in the case of **Atchison, Topeka & Santa Fe R. R. Co. vs. Denver & New Orleans R. R. Co., 110 U. S., 667, et seq.**

Says that Court, at page 681: A railroad company has the right:

> "To establish its own stations and to regulate the time and manner in which it will carry persons and property and the price to be paid therefor. As to all these matters, it is undoubtedly subject to the power of legislative regulations, but in the absence of regulations it owes only such duties to the public, or to individuals, associations or corporations as the common law, or some custom having the force of law, has established for the government of those in its condition."

And again at page 682:

> "A station may be established for the special accommodation of a particular customer; but we have never heard it claimed that every other customer could, by a suit in equity, in the absence of a statutory or contract right, compel the company to establish a like station for his special accommodation at some other place. Such matters are, and always have been proper subjects for legislative consideration, unless prevented by some charter contract; but, as a general rule, remedies for injustice of that kind can only be obtained from the Legislature. A Court of

— 133 —

chancery is not, any more than is a Court of law, clothed with legislative power. It may enforce, in its own appropriate way, the specific performance of an existing legal obligation arising out of contract, law, or usage, but it cannot create the obligation.''

The judgment appealed from is correct.

Judgment affirmed.

Opinion and decree, May 5th, 1913.

Rehearing refused, June 2nd, 1913.